## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  ORANGE LEAF HOLDINGS LLC,<br>an Oklahoma limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>1.  DHUKKA'S FROZEN TREATS, LLC, a<br>Texas limited liability company;<br>2.  ARSH FROZEN TREATS, LLC, a Texas<br>limited liability company;<br>3.  HUSSAIN HUSSAIN, an individual;<br>4.  PERVEZ MESHANIA, an individual;<br>5.  SYED ALI, an individual; and<br>6.  MUBARAK SUNESRA, an individual,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  CIV-15-430-HE |

## COMPLAINT

Plaintiff, Orange Leaf Holdings LLC, ("**Orange Leaf**"), by and through its undersigned counsel, hereby files this Complaint against Defendants, Dhukka's Frozen Treats, LLC ("**Dhukka**"), Arsh Frozen Treats, LLC ("**Arsh**") (Dhukka and Arsh are herein collectively referred to as "**Franchisees**"), Hussain Hussain ("**Hussain**"), Pervez Meshania ("**Meshania**"), Syed Ali ("**Ali**"), and Mubarak Sunesra ("**Sunesra**") (Hussain, Meshania, Ali and Sunesra are hereinafter referred to collectively as "**Guarantors**")(Franchisees and Guarantors are hereinafter referred to collectively as "**Defendants**"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Orange Leaf is, and at all times relevant to this action has been, an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma, with members who are individuals residing in Oklahoma, California and Colorado.

2.      Upon information and belief, Hussain is, and at all times relevant to this action was, an individual residing in the state of Texas.

3.      Upon information and belief, Meshania is, and at all times relevant to this action was, an individual residing in the state of Texas.

4.      Upon information and belief, Ali is, and at all times relevant to this action was, an individual residing in the state of Texas.

5.      Upon information and belief, Sunesra is, and at all times relevant to this action was, an individual residing in the state of Texas.

6.      Dhukka is, and at all times relevant to this action was, a Texas limited liability company with its principal place of business in the state of Texas.  Upon information and belief, Dhukka's members are individuals residing in the state of Texas.

7.      Arsh is, and at all times relevant to this action was, a Texas limited liability company with its principal place of business in the state of Texas, Upon information and belief, Arsh's members are individuals residing in the state of Texas.

8.      This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.,* and Oklahoma state law is made applicable by the terms of each of the Franchise Agreements.

9.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331, 1338, and 15 U.S.C. §1121.

10.     Orange Leaf and Defendants are citizens of different states, and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs; therefore, this Court also has jurisdiction pursuant to 28 U.S.C. §1332. Venue is proper in this district pursuant to the terms of each of the Franchise Agreements.

11.     This Court has jurisdiction over each of the Defendants pursuant to the terms of each of the Franchise Agreements and Guaranties.

## BACKGROUND

Orange Leaf incorporates by reference the allegations set forth in paragraphs 1-11 above and states further:

12.     Orange Leaf, a frozen yogurt company with its headquarters and principal place of business in Oklahoma City, Oklahoma, is engaged in the franchising of retail stores that offer self-service frozen yogurt and toppings.

13.     Through its franchise system, Orange Leaf promotes and provides products and services to its customers throughout the United States. In order to identify and differentiate its stores, products and services, Orange Leaf allows its approved franchisees to utilize the Orange Leaf trademarks and trade names in connection with the operation, advertising and identification of the convenience store.

14.     Since on or before January 2010, the Orange Leaf marks have been used at multiple storefronts and in local and national advertising efforts, thus establishing substantial goodwill associated with the Orange Leaf marks throughout the United States, including Oklahoma and Texas.

15.     Since 2011, Guarantors have maintained an ownership interest in Franchisees and/or served as guarantors under the Franchise Agreements.  Thus, Guarantors have maintained a continuing business obligation with Orange Leaf in Oklahoma for over three (3) years.

16.     On May 9, 2011, Dhukka executed an Orange Leaf Franchise Agreement and associated exhibits to open a franchise in Sugar Land, Texas (the "Sugar Land Location").

A true and correct copy of the Sugar Land Location Franchise Agreement is attached hereto as Exhibit "1."

17.     On August 29, 2011, Arsh executed an Orange Leaf Franchise Agreement and associated exhibits to open a franchise in Clear Lake, Texas (the "Clear Lake Location"). A true and correct copy of the Clear Lake Location Franchise Agreement is attached hereto as Exhibit "2."

18.     In connection with the Sugar Land Location Franchise Agreement, Hussain and Meshania executed a Guaranty and Assumption of Obligations (the "Sugar Land Guaranty") personally and unconditionally guaranteeing of the full and prompt payment and performance of each and every undertaking, agreement and covenant set forth in the Sugar Land Location Franchise Agreement and agreeing to be personally bound by, and personally liable for, the breach of each and every provision in the Sugar Land Location Franchise Agreement. A copy of the Sugar Land Guaranty is made part of the Sugar Land Location Franchise Agreement attached as set forth above.

19.     In connection with the Clear Lake Location Franchise Agreement, Ali and Sunesra executed a Guaranty and Assumption of Obligations (the "Clear Lake Guaranty") personally and unconditionally guaranteeing of the full and prompt payment and performance of each and every undertaking, agreement and covenant set forth in the Clear Lake Location Franchise Agreement and agreeing to be personally bound by, and personally liable for, the breach of each and every provision in the Clear Lake Location Franchise Agreement. A copy of the Clear Lake Guaranty is made part of the Clear Lake Location Franchise Agreement attached as set forth above.

20.     Franchisees are in breach of the Franchise Agreements by, *inter alia,* failing

to pay sums owed to Orange Leaf.

21.     The terms of the Franchise Agreement allow for Orange Leaf to terminate the Franchise Agreements upon the occurrence of Franchisees' defaults.

22.     Franchisees and Guarantors have been put on notice of the above-referenced defaults and, though instructed to do so, have not paid sums due and owing to Orange Leaf.

23.     Upon information and belief, Defendants are continuing to operate and continue to advertise products and services utilizing the Orange Leaf marks in violation of their obligations that survive the termination of the Franchise Agreements.

24.     Upon information and belief, the stores operated by Defendants continue to contain colors and design elements that utilize Orange Leaf's protected trade secrets and infringe on Orange Leaf's trade dress.

25.     As between Orange Leaf and Defendants, Orange Leaf has mark priority and is entitled to protection under the Lanham Act and under common law for the Orange Leaf marks, trade secrets, and trade dress.

26.     The Orange Leaf marks and trade dress have become well known and easily recognized by the public as designating Orange Leaf's goods and services. The marks are distinctive and famous.

27.     The Orange Leaf marks were designed to distinguish their products and services from those sold by others in the industry.

## CAUSES OF ACTION

### COUNT I. VIOLATION OF LANHAM ACT

Orange Leaf incorporates by reference the allegations set forth in paragraphs 1-27 and further states:

28.     By continuing to use the Orange Leaf marks in ongoing operation of Franchisees' stores, Franchisees are infringing on Orange Leaf's marks and engaged in unfair competition with Orange Leaf in violation of Section 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a).

29.     Franchisees' continued use of the Orange Leaf marks is deceptive and is likely to cause confusion in the marketplace.

30.     Franchisees have used in commerce false designations of origin and false or misleading descriptions of fact in connection with the sale of or the promotion of Franchisees' business and products, which is likely to and has caused confusion, or which is likely to cause mistake or to deceive as to affiliation, connection or association with Orange Leaf and/or its principals and products, or as to the origin, sponsorship or approval of Orange Leaf and/or its representatives' services or commercial activities.

31.     Franchisees have engaged in a pattern and practice of falsely disparaging Orange Leaf's products and reputation.

32.     Franchisees' activities constitute unfair competition in violation of the Lanham Act.

33.     The foregoing activities have resulted in profits to and unjust enrichment of the Franchisees and/or Franchisees' representatives, have injured Orange Leaf's ability to fairly compete, have caused damage to Orange Leaf's business and reputation, and have caused other damage to Orange Leaf including, but not limited to, loss of profits and related costs and expenses in amounts to be proven at trial.

34.     The conduct of Franchisees and/or Franchisees' representatives has caused and will continue to cause injury to Orange Leaf unless restrained by this Court.

35.     By virtue of Franchisees' continued use of the Orange Leaf marks, Orange Leaf is entitled to injunctive relief.

36.     Franchisees' actions were and continue to be in bad faith, willful and are in conscious or reckless disregard of the rights of Orange Leaf such that this constitutes an exceptional case for which Orange Leaf is entitled to treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II. TRADE DRESS INFRINGEMENT

Orange Leaf incorporates by reference the allegations set forth in paragraphs 1-36 and further states:

37.     Since in or before the year 2009, Orange Leaf, or its predecessor in interest, has engaged in the sale and distribution of frozen yogurt by and through licensees and franchisees who operate stores designed and decorated with color schemes, layouts, and designs that combine to form an inherently distinctive motif on both the interior and exterior of their superstores.

38.     Upon information and belief, Franchisees are continuing to operate frozen yogurt stores and have intentionally and deliberately retained the motif designed and used by Orange Leaf.

39.     By continuing to operate stores with a deceptively similar, and/or identical, motif(s), Franchisees are in violation of 11 U.S.C. § 1125(a) for infringing on Orange Leaf's distinctive trade dress.

40.     By virtue of Franchisees' unauthorized use of Orange Leaf's trade dress, Orange Leaf is entitled to injunctive relief.

41.     Franchisees have willfully engaged and continue to engage in the

infringement of Orange Leaf's trade dress, have acted in bad faith and in conscious or reckless disregard of the rights of Orange Leaf for which Orange Leaf is entitled to attorneys' fees and costs, as well as exemplary damages pursuant to applicable Oklahoma law.

## COUNT III. BREACH OF CONTRACT

Orange Leaf incorporates by reference the allegations set forth in paragraphs 1-41 and further states:

42.     Franchisees' failure to pay sums due and owing to Orange Leaf constitutes a default under the terms of their Franchise Agreements.

43.     Orange Leaf delivered notice to Franchisees that their failure to cure the defaults within the period stated in the Franchise Agreements would result in an automatic termination of the Agreements, thereby triggering the commencement of their post-termination obligations which include, but are not limited to, the cessation of operations and use of the Orange Leaf marks (the "**Termination Notices**").

44.     Upon information and belief, Franchisees have not complied with the post-termination obligations resulting in additional defaults under the Franchise Agreements.

45.     Franchisees' violations of the terms of the Franchise Agreements entitle Orange Leaf to both injunctive and monetary relief in excess of seventy-five thousand dollars ($75,000.00).

## COUNT IV. BREACH OF THE GUARANTY
(against Hussain and Meshania)

Orange Leaf incorporates by reference the allegations set forth in paragraphs 1-45 and further states:

46.     At the time of entering into each of the Franchise Agreements for the Sugar Land Location, Hussain and Meshania signed the Sugar Land Guaranty in which they personally and unconditionally guaranteed the punctual payment and performance of each agreement and covenant set forth in the Sugar Land Location Franchise Agreement.

47.     The Sugar Land Guaranty provides that Hussain and Meshania's liability is joint and several and not contingent or conditioned upon pursuit of the Franchisee.

48.     Hussain and Meshania have failed to fully perform their pre and post-termination obligations under the Sugar Land Location Franchise Agreement.

49.     Therefore, Hussain and Meshania are each individually liable for payment of all damages suffered by Orange Leaf and are subject to any and all injunctive relief available to Orange Leaf to prevent further breach of the covenants contained in the Sugar Land Location Franchise Agreement.

## **COUNT V. BREACH OF THE GUARANTY**
(against Ali and Sunesra)

Orange Leaf incorporates by reference the allegations set forth in paragraphs 1-49 and further states:

50.     At the time of entering into each of the Franchise Agreements for the Clear Lake Location, Ali and Sunesra signed the Clear Lake Guaranty in which they personally and unconditionally guaranteed the punctual payment and performance of each agreement and covenant set forth in the Clear Lake Location Franchise Agreement.

51.     The Clear Lake Guaranty provides that Ali and Sunesra's liability is joint and several and not contingent or conditioned upon pursuit of the Franchisee.

52.     Ali and Sunesra have failed to fully perform their pre and post-termination obligations under the Clear Lake Location Franchise Agreement.

53.     Therefore, Ali and Sunesra are each individually liable for payment of all damages suffered by Orange Leaf and are subject to any and all injunctive relief available to Orange Leaf to prevent further breach of the covenants contained in the Clear Lake Location Franchise Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Orange Leaf requests judgment in its favor as follows:

(A)     An award of damages to compensate Orange Leaf for Franchisees' infringement of the Orange Leaf trademark and trade dress, including Franchisees' profits, any damages sustained by Orange Leaf, and any costs associated with bringing this action as provided in 15 U.S.C. § 1117;

(B)     An award of reasonable attorney fees incurred by Orange Leaf as provided in 15 U.S.C. § 1117;

(C)     That Defendants pay actual damages in an amount determined at trial, which damages include, without limitation, Defendants' profits, trebled pursuant to 15 U.S.C. § 1117 (b);

(D)     That Defendants pay punitive damages in excess of seventy-five thousand dollars ($75,000.00) as requested above as determined at trial;

(E)     That Defendants be preliminary and then permanently enjoined from any and all conduct that constitutes unfair competition;

(F)     That Defendants be divested of and ordered to pay to Orange Leaf all amounts resulting from unjust enrichment derived from their illicit activities;

(G)     That Defendants be ordered to account to Orange Leaf for Defendants' gains, profits, and advantages and for any actual damages sustained by Orange Leaf arising from the foregoing acts of trademark infringement, trade dress infringement, copyright infringement, false advertising, and unfair competition; that Defendants, and Defendants' agents, employees, and all other persons, firms, or corporations acting or claiming to act on their behalf, or in concert with them, be restrained, enjoined, and prohibited from using the Orange Leaf marks or any name or logo substantially similar to the Orange Leaf marks, either alone or in combination with other works or symbols, as a part of any trademark, service mark, trade name, corporate name, or in any other manner associated with any business products and services relating to Defendants' business, or the products or services Defendants sells or otherwise provide in the United States;

(H)     That Defendants and Defendants' agents, employees, and all other persons, firms, or corporations acting or claiming to act on their behalf, or in concert with them, be restrained, enjoined, and prohibited from using the Orange Leaf trade dress including, but not limited to, any color schemes, layouts, designs, interior and exterior motifs substantially similar to the Orange Leaf trade dress, in any manner associated with any business products and services relating to Defendants' business, or the products or services Defendants sell or otherwise provide in the United States;

(I)     That Defendants be required to deliver to Orange Leaf, all labels, signs, materials, and advertisements in the possession or control of Defendants in the United

States bearing any name or logo substantially similar or otherwise likely to be confused with the Orange Leaf, or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, and other articles by means of which such items can be made;

(J)     An order granting damages to compensate Orange Leaf for lost revenue as a result of Franchisees' breach of the Franchise Agreements in an amount in excess of seventy-five thousand dollars ($75,000.00);

(K)     An order granting Orange Leaf Judgment against Hussain and Meshania, individually, awarding injunctive relief and the right to recover any and all monetary damages awarded against Franchisees for breach of the Sugar Land Guaranty;

(L)     An order granting Orange Leaf Judgment against Ali and Sunesra, individually, awarding injunctive relief and the right to recover any and all monetary damages awarded against Franchisees for breach of the Clear Lake Guaranty;

(M)     That Defendants be preliminarily and then permanently enjoined from any and all conduct that is a violation of the Franchise Agreements;

(N)     An award of reasonable attorney fees incurred by Orange Leaf as provided in the Franchise Agreements and the Guaranties; and

(O)     That Orange Leaf be granted such other and further relief as this Court deems just in law and equity.

Respectfully submitted,

s/ Max J. Rhodes
Carrie L. Palmer, OBA #15101
Russell A. Wantland, OBA #19965
Adam J. Strange, OBA #20347
Max J. Rhodes, OBA #30230
RESOLUTION LEGAL GROUP
100 E. California Avenue, Suite 200
Oklahoma City, Oklahoma 73104
Tel. 405.235.6500 / Fax. 405.758.4775
Carrie@ResolutionLegal.com
Max@ResolutionLegal.com
Russell@ResolutionLegal.com
Adam@ResolutionLegal.com

***Attorneys for Plaintiff,
Orange Leaf Holdings LLC***